UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* NANCY GIAQUINTO, C.P.A., <br><br> Plaintiff, <br><br> - against - <br><br> HIGHLAND-CLARKSBURG HOSPITAL, INC.; RC GENERAL CONTRACTORS INC.; M&L ELECTRIC LLC; ASSOCIATED ARCHITECTS, INC.; MICHAEL CASDORPH; PAUL TENNANT; AND CHARLES NARY, <br><br> Defendants. | Civil Action No. 1:18-cv-220 |

**Omnibus Memorandum of Law in Opposition to Motions to Dismiss Filed by Defendants Highland-Clarksburg Hospital, Inc., RC General Contractors, Inc., Michael Casdorph, M&L Electric, and Charles Nary**

# TABLE OF CONTENTS

INTRODUCTION AND PROCEDURAL BACKGROUND ................................................ 1

THE PENDING MOTIONS ................................................................................................. 3

STANDARD ........................................................................................................................... 3

FACTS .................................................................................................................................... 5

ARGUMENT .......................................................................................................................... 6

   I.   The Court Should Grant Additional Time to Perfect Service Because the Delay was the Result of Excusable Neglect. ................................................ 6

      A. Excusable Neglect Standard ................................................................. 7

      B. The Delay Here is the Result of Excusable Neglect ............................. 8

   II. The Court Should Exercise its Discretion to Grant an Extension of Time to Perfect Service as to All Defendants. ....................................................... 9

      A. The Court may Extend the Service Deadline Without a Showing of Good Cause ......................................................................................... 10

      B. Plaintiff Relator Meets the Standard for the Exercise of Discretion Here ..................................................................................................... 12

          i.   *The preference for resolving cases on their merits supports an extension of time* ................................................................... *12*

          ii.   *The lack of prejudice supports an extension of time* ..................... *13*

          iii. *Defendants' receipt of actual notice supports an extension of time* ............................................................................................ *14*

          iv. *Plaintiff perfected service before filing this brief which supports an extension of time* ........................................................ *15*

          v.   *Plaintiff Relator acted in good faith which weighs in favor of an extension of time* ............................................................... *16*

   III. The FAC Should Not be Dismissed for Lack of Prosecution. .................... 17

      A. The Chandler Factors Uniformly Weigh Against Imposition of Any Sanction Here ..................................................................................... 19

      B. The Lack of Any Explicit Warning Requires Denial of Defendants' Motion to Dismiss .............................................................................. 21

   IV. The FAC is Not Subject to Dismissal Under the Applicable Statute of Limitations. ................................................................................................. 22

      A. The Applicable Statute of Limitation has Not Expired ....................... 23

      B. The FAC Relates Back to the Original Complaint and is Therefore Timely .................................................................................................. 26

i

C.  The Fraudulent Concealment Tolling Doctrine Prevents Defendants
    from Raising a Statute of Limitations Defense Here ............................................ 30

V.  The First Amended Complaint Meets the Pleading Standard of Rule 9(b). .............. 32

**CONCLUSION** .................................................................................................................... **36**

## INTRODUCTION AND PROCEDURAL BACKGROUND

This Action arises out of the construction or refurbishment of the Highland-Clarksburg Hospital. That large construction project was funded with nearly $30 million in direct government expenditures. FAC at § II. Defendants took advantage of their insider and related party positions to divert substantial sums of government money away from the construction and into their own pockets while obscuring their actions. FAC at § IV.

Plaintiff Relator Ms. Giaquinto was the Controller and then the Chief Financial Officer for the Hospital for a portion of the construction and for a period of time after construction was completed and the Hospital was open and treating patients. FAC at ¶ 7. By virtue of that role, she had occasion to unravel the hidden nature of Defendants' many interrelationships and eventually find the money they stole from the government during construction.

She filed this *qui tam* False Claims Act ("FCA") case under seal on December 10, 2018. (Dkt. No. 1). On November 1, 2021 the government filed its notice of declination indicating it would not intervene in the case. (Dkt. No. 20). On November 3, 2021 the Court entered an order unsealing the original Complaint and directing service upon Defendants.[1] (Dkt. No. 21). On January 31, 2022, Plaintiff Relator filed a First Amended Complaint ("FAC") clarifying precisely how and how much money Defendants are alleged to have taken from the government. (Dkt. No. 22).

Original service was accomplished by Plaintiff Relator's prior West Virginia counsel and in particular by Cierra Walker, a paralegal employed by prior counsel. *See* Exhibit A, Affidavit of Cierra Walker. As Ms. Walker attests, prior counsel sought issuance of summonses for all

---

[1] This Order is dated November 2, 2021, but was entered on the Docket on November 3, 2021.

1

Defendants before the expiration of the 90-day service deadline. *Id.* Unfortunately, because the Court was closed to the public due to COVID mitigation measures, a three-day delay occurred between requesting issuance of summonses and prior counsel's receipt. *Id.*; *see also United States ex rel. Maharaj v. Est. of Zimmerman*, 427 F. Supp. 3d 625, 654 (D. Md. 2019) (holding clerk's several day delay issuing summons "militates against dismissal of the suit on the basis of a technicality.").

Upon receiving the summonses, prior counsel served each Defendant using certified mail, as they do in the ordinary course of their West Virginia State Court practice.[2] Affidavit of Cierra Walker. Returns of service indicate Defendants Highland-Clarksburg Hospital, Inc., RC General Contractors, Inc., Michael Casdorph, were initially served on February 4, 2022, within 2 days of receipt of summonses. (Dkt. Nos. 24-26). Defendants M&L Electric and Charles Nary were initially served on February 28, 2022.[3] (Dkt. Nos. 45, 46). The initial motions to dismiss raising service issues were filed while counsel was out of town. But, upon return, Pennsylvania counsel sought the reissuance of summonses (again delayed by the need for the Clerk to snail mail signed copies back to counsel) and then re-served every Defendant other than RC General.[4] The Hospital was re-served on March 25, 2022, M&L Electric and Charles Nary were each re-served

---

[2] Indeed, since the adoption of e-filing in the state courts, the trial courts of West Virginia have specifically acknowledged service by certified mail sent by plaintiffs' counsel. *See* Exhibit B, Screencap of West Virginia E-Filing options listing "Plaintiff – Certified Mail".

[3] All of the summonses were placed in the mail at the same time. *See* Exhibit A, Affidavit of Cierra Walker at ¶ 8. Only the vagaries of the United States Postal Service can explain why most of the service packets were immediately delivered and two were not.

[4] RC General having had an opportunity to do so, has not raised any objection to the nature or impropriety of service, only that service was delayed.

on March 28, 2022. (Dkt. Nos. 58-63). Re-service was attempted on Mr. Casdorph on re-served on March 30, 2022, but he had moved. *See* Exhibit C, Casdorph March 30, 2022 Return of Service. After the process service company's employees came down with COVID, the process service company engaged the Sheriff to attempt service on another address on April 6, 2022. The final successful return of service affidavit will be docketed as soon as it is available.

## THE PENDING MOTIONS

Defendants Highland-Clarksburg Hospital, Inc., RC General Contractors, Inc., Michael Casdorph, M&L Electric, and Charles Nary (the "Moving Defendants") have filed motions to dismiss the FAC. (Dkt. Nos. 33-37, 55-56). Moving Defendants have each sought to dismiss the FAC under Rules 12(b)(5) and 41(b) for defective service of process. In addition, RC General seeks dismissal under Rule 12(b)(6) because it asserts the claims are barred by the relevant statute of limitations and under Rule 9(b) because it asserts the claims against it are pleaded without sufficient particularity.

For the reasons that follow, the Court should exercise its discretion to grant Plaintiff Relator a short extension of time to perfect service as to all Defendants. In addition, the Court should deny the merits-based portions of RC General's motion to dismiss because the FAC was timely filed, relates back to the original Complaint, and Defendants are barred from raising a statute of limitations defense at this time. In addition, the FAC contains sufficient particularity to meet the standard of Rule 9(b), put Defendants on notice of the claims against them, and permit Defendants to prepare their defenses.

## STANDARD

The standard which applies to motions to dismiss for failure to state a claim under Rule 12(b)(6) is well known. "When ruling on a motion to dismiss, courts must accept as true all of

3

the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (reversing dismissal). "Although it is true that the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Id.* (internal quotation and citation omitted).

Because FCA cases allege a fraud against the government, they must be pleaded with particularity under Rule 9(b). *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018). However, there are at least two ways to meet this heightened standard in the Fourth Circuit.

> First, a plaintiff can allege with particularity that specific false claims actually were presented to the government for payment. This standard requires the plaintiff to, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. Alternatively, a plaintiff can allege a pattern of conduct that would *necessarily* have led to submission of false claims to the government for payment.

*United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018) (internal quotations and citations omitted, emphasis original). Importantly, however, a relator need not "produce documentation or invoices at the outset of the suit" but merely "connect the dots, even if unsupported by precise documentation, between the alleged false claims and government payment." *Id.* at 199. Or as the Fourth Circuit stated in *ex rel. Nathan*, the complaint must provide "some indicia of reliability" that a claim was "likely submitted or should have been submitted to the Government." *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013).

> As a general rule, as we have recognized, a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a

defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.

*United States ex rel. Bunk v. Gov't Logistics N.V.*, 842 F.3d 261, 275 (4th Cir. 2016) (vacating dismissal of Relator's claims and remanding).

As set out below, the allegations in the FAC meet the standard of Rule 9(b) and RC General's motion to dismiss must be denied.

RC General also raises a statute of limitations defense but "[a] court may grant a 12(b)(6) motion on statute of limitations grounds only if the time bar is **apparent on the face of the complaint**." *Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) (emphasis added). It is not here. In any event, "the burden of establishing the affirmative defense rests on the defendant" and RC General cannot carry that burden here. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

## FACTS

Moving Defendants are alleged to have combined and conspired to submit, or cause the submission of, false claims and the use of false documents in connection with false claims related to the construction or refurbishment of the Highland-Clarksburg Hospital. This multi-year construction project was funded by loans issued by the USDA both before and after construction was completed. (Dkt. No. 22 at §§ I(B), II).

Defendant Casdorph abused his position as the Director of Facilities and Construction and CEO of the Hospital to cause the Hospital to hire the other Defendants, all prohibited related parties, to participate in the construction project. (Dkt. No. 22 at ¶ 24 and § III). Then, during construction, Defendants submitted or caused the submission and use of numerous documents falsely attesting to the performance of work that was not done or to the entitlement to payments which were not due. (Dkt. No. 22 at § IV). Defendants collected these monies from USDA

5

funds. (Dkt. No. 22 at ¶ 217). Because all subsequent payment applications recite the (in this case false) status of prior completed and paid work, the false claims and papers quickly multiplied. (*See e.g.,* Dkt. No. 22 at ¶ 148).

In general, these documents were funneled up through RC General as the prime contractor and ultimately to Defendant Casdorph as the "owner's representative" and the Hospital as the "owner" and direct recipient of loan funds on the project. (Dkt. No. 22 at ¶¶ 61, 63, 64; *see also* Dkt. No. 22-22). Defendants Casdorph and the Hospital then issued ACH payments to the other Defendants using USDA money. (*See e.g.,* Dkt. No. 27-1). After construction was complete, the USDA issued a new loan fully replacing construction financing. (Dkt. No. 22 at ¶ 64). In other words, all monies overspent and stolen by Defendants during construction were ultimately paid (again) by the USDA after construction.

In sum, Defendants are alleged to have over or double paid themselves approximately $1 million dollars of government funds they were not owed or entitled. (Dkt. No. 22 at ¶ 2).

## ARGUMENT

### I.   The Court Should Grant Additional Time to Perfect Service Because the Delay was the Result of Excusable Neglect.[5]

Under rule 6(b)(1)(B), the Court should grant Plaintiff Relator a brief extension of time to perfect service because prior counsel acted with excusable neglect in choosing the form of service and in relying upon the United States Post Office to deliver local mail diligently and

---

[5] To the extent required, Plaintiff Relator respectfully requests the Court construe this portion of the memorandum as a motion for relief under Rule 6(b)(1)(B). Including the request here instead of filing a separate motion is intended to conserve litigant and judicial resources.

speedily. The Court may extend a missed deadline where a litigant shows excusable neglect. Fed. R. Civ. P. 6(b)(1)(B).

### A.   Excusable Neglect Standard

As the United States Supreme Court has explained, when determining whether excusable neglect exists, the Court should consider "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (analogizing to Rule 6(b)). The Court also noted that excusable neglect is an "elastic concept" and that "determination of what sorts of neglect will be considered "excusable" is an equitable one, taking account of all relevant circumstances." *Id.* at 391.

A number of circumstances have been found to satisfy this standard from the miscalculation of deadlines to failing to notice entry of judgment. *Gordon v. TBC Retail Grp., Inc.*, No. 2:14-CV-03365-DCN, 2020 WL 5877065, at *3 (D.S.C. Oct. 2, 2020) (granting motion for extension of time to file complaint after deadline elapsed due to counsel's miscalculation of deadline); *Fernandes v. Craine*, 538 F. App'x 274, 276 (4th Cir. 2013) (reversing decision to deny motion for extension of time where counsel's email misfiled judgment notice from ECF); *Harman v. Unisys Corp.*, 356 F. App'x 638, 640 (4th Cir. 2009) (holding no abuse of discretion when District Court extended deadline to file opposition to summary judgment).

Excusable neglect "may encompass delays caused by inadvertence, mistake, or carelessness, at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and movant's excuse has some merit. *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) (quoting *Pioneer*) (internal quotation and citation omitted). The Fourth

Circuit has "recognized that excusable neglect may extend to inadvertent delays. *In re Am. Nurses Ass'n*, 643 F. App'x 310, 313 (4th Cir. 2016) (affirming 100-day expansion of deadline) (internal quotation and citation to *Pioneer* omitted).

### B.      The Delay Here is the Result of Excusable Neglect

Moving Defendants other than RC General argue that service was both improper and late. It was, they argue, improper because service was accomplished through certified mail sent by counsel and not the clerk. On net, the four *Pioneer* factors weigh in favor of granting Plaintiff Relator additional time to perfect service.

First, and as described in more detail below, Defendants will not suffer any prejudice from the granting of a brief extension of time. Second, the delay at issue is short, a period of several weeks between the expiration of the original service deadline and the re-service of each Defendant other than RC General.

Third, and most importantly, the reason for the delay and the service method are excusable. The reason for the delay was three-fold.[6] Prior counsel believed that West Virginia's practice and custom of accepting service by certified mail sent by counsel would satisfy Rule 4(e)(1). Prior counsel's paralegal has attested that service was attempted via certified mail because, since the advent of electronic filing in West Virginia, certified mail sent by counsel has been an accepted method of service in West Virginia State Court proceedings. Affidavit of Cierra Walker at ¶ 10 and Exhibit B; *see gen.* Fed. R. Civ. P. 4(e)(1) (permitting service that complies with local state law). Indeed, the West Virginia State Courts have a category of return

---

[6] In addition, it may have been frivolous to serve the original complaint when counsel knew the FAC was in the process of being drafted and would be filed in advance of the original service deadline.

of service built into the e-filing system specifically for certified mail sent by plaintiff's counsel. *See* Affidavit of Cierra Walker at ¶ 9 and Exhibit B.

Counsel believed the United States Post Office would expeditiously deliver local mail. And finally, counsel believed the delay in receipt of the summonses from the Court due to COVID mitigation related delays would not count against Plaintiff Relator. It is worth noting that the USPS did quickly deliver service packages to all Defendants other than M&L Electric and Charles Nary and those packets were directed to the same address. It is not known why the mail was so delayed for this single address. The delay here was not reasonably within the control of counsel.

Fourth, there is no serious allegation that Plaintiff Relator acted out of anything other than good faith.

To the extent the Court determines service by certified mail sent by counsel is insufficient or improper or that original service was late, Plaintiff Relator should be granted an extension of time to perfect service.

## II.   The Court Should Exercise its Discretion to Grant an Extension of Time to Perfect Service as to All Defendants.

Each Moving Defendant seeks dismissal, with or without prejudice, for defects in the timing and/or nature of service made by Plaintiff Relator. Under Rule 4(m), the Court has the power to impose dismissal as the ultimate sanction for untimely or irregular service. However, exercising that power in this case would be unwarranted and unjust. Instead, following the express language of the Rule, the intent of the drafters, and the decisions of the Supreme Court of the United States, the Fourth Circuit, and numerous District Courts in this Circuit, the Court should exercise its discretion to grant Plaintiff Relator a brief extension of time to perfect service.

A.    **The Court may Extend the Service Deadline Without a Showing of Good Cause**

On its face, the Rule permits the Court to allow additional time for perfecting service even in the absence of good cause.

> If a defendant is not served within 90 days after the complaint is filed, the court…must dismiss the action without prejudice against that defendant or **order that service be made within a specified time**.

Fed. R. Civ. P. 4(m) (emphasis added).

The comment to subdivision (m) directly speaks to the present situation.

> The new subdivision explicitly … **authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown**. … Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action.

Fed. R. Civ. P. 4 Comment to Subdivision (m) (emphasis added).[7]  In addition, when the time for service was reduced from 120 to 90 days the drafters commented that "[s]hortening the presumptive time for service will increase the frequency of occasions to extend the time." Fed. R. Civ. P. 4 Comment to 2015 Amendment.

Courts at every level of the federal judiciary have recognized the reality that District Courts may extend the time for service of process. *Henderson v. United States*, 517 U.S. 654, 662 (1996) ("in 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120-day period 'even if there is no good cause shown.'"). The Supreme Court further clarified that "[t]he Federal Rules thus convey a clear message: Complaints are not to be

---

[7] It is important to note that the new subdivision (m) replaced old subdivision (j) which **did** require dismissal in the absence of good cause.

dismissed if served within 120 days, **or within such additional time as the court may allow.**"
*Id.* at 663 (emphasis added).[8]

The Fourth Circuit has more than once acknowledged that District Courts may expand
the time for service at their discretion and **without** any finding of good cause. *See e.g., Scruggs
v. Spartanburg Reg'l Med. Ctr.*, 198 F.3d 237 (4th Cir. 1999) (unpublished) (commenting that
"the district court, in its discretion, could have extended the time for proper service of process,
notwithstanding its apparent belief to the contrary"); *Giacamo-Tano v. Levine,* 199 F.3d 1327
(4th Cir. 1999) (unpublished) ("Even if a plaintiff does not establish good cause, the district
court may in its discretion grant an extension for time of service.") (citations to cases from the
Tenth and Seventh Circuits omitted).

District Courts across the Circuit have reached the same conclusion, often exercising
their discretion to extend the time for service. *See e.g., Lamb v. Comm'r of Soc. Sec.*, No.
1:18CV120, 2020 WL 2495137, at \*4 (N.D.W. Va. May 14, 2020) (denying motion to dismiss
and directing case to proceed in normal course) (J. Kleeh); *Ex rel. Maharaj*, 427 F. Supp. 3d at
654 (extending service deadline in *qui tam* action under False Claims Act as matter of
discretion).[9]

---

[8] The Rule has since been changed to reduce the time for service from 120 to 90 days.

[9] *See also Sandhir v. Little*, No. 1:17CV102, 2018 WL 3326836, at \*5 (N.D.W. Va. Jan. 29,
2018), *Mag. Aloi report and recommendation adopted in part,* No. 1:17CV102, 2018 WL
4144454 (N.D.W. Va. Aug. 30, 2018) (providing an additional 30 days for service as matter of
discretion); *LHF Prods., Inc. v. Does*, No. 3:16CV284, 2016 WL 7423094, at \*6 (E.D. Va. Dec.
22, 2016) (granting a third extension of time to perfect service without any showing of good
cause and as a matter of discretion); *Velcovich v. Consol Energy, Inc.*, No. CIV A 5:07CV113,
2008 WL 4415428, at \*10 (N.D.W. Va. Sept. 25, 2008) (denying motion to dismiss for lack of
service and granting additional 90 days to effect service); *Bruce v. City of Wheeling*, No. CIV.A.

11

Accordingly, the *Mendez* decision, which was issued before Rule 4 was amended and before *Henderson* was published, does not require dismissal or prevent the exercise of discretion in the absence of good cause at this stage of the litigation. *See gen. Mendez v. Elliot*, 45 F.3d 75, 77 (4th Cir. 1995) (cited by Moving Defendants).

**B.**    **Plaintiff Relator Meets the Standard for the Exercise of Discretion Here**

In *Bruce*, Judge Stamp listed the below factors a Court should consider when determining whether to extend the service deadline in the absence of good cause:

> whether a statute of limitations bar would preclude the plaintiff from re-filing, whether an extension will prejudice the defendant, whether the defendant had actual notice of the lawsuit, and whether the plaintiff eventually effected service.

*Bruce*, 2008 WL 4763274, at *5.

### i.    *The preference for resolving cases on their merits supports an extension of time*

Here, the first factor weighs strongly in favor of granting an extension of time to perfect service and doing so comports with the general and strong preference for the resolution of disputes on the merits and not technicalities that permeates the federal court system. "[T]here is a preference to resolve cases on the merits rather than technical procedural grounds." *Blaylock v. United Parcel Serv., Inc.,* No. CV 1:20-00156, 2020 WL 3979667, at *3 (S.D.W. Va. July 14, 2020) (granting 45-day extension of time to perfect service as matter of discretion) *citing United States v. Shaffer Equip. Co.,* 11 F.3d 450, 462-63 (4th Cir. 1993) (noting the "strong policy that cases be decided on the merits" and "broad policies of deciding the case on the merits where the orderly administration of justice and the integrity of the process have not been permanently

---

5:07CV76, 2008 WL 4763274, at *6 (N.D.W. Va. Oct. 29, 2008) (denying motion to dismiss under Rule 12(b)(5) and extending time for service as a matter of discretion).

frustrated[.]"). As the Supreme Court has held, "the requirements of the rules of procedure should be liberally construed and … 'mere technicalities' should not stand in the way of consideration of a case on its merits." *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 316 (1988).

Various District Courts have recognized that dismissal under Rule 4(m) after the expiration of the relevant statute of limitations would have the unwanted and unwarranted effect of finally disposing of a case without ever reaching the merits. *Blaylock,* 2020 WL 3979667, at *3 (noting potential expiration of statute of limitations is "typically grant[ed] extra weight" when deciding to extend service deadline); *Velcovich v. Consol Energy, Inc.*, 2008 WL 4415428, at *10 (granting extension of deadline as matter of discretion because potential for statute of limitation to bar refiling).

At least RC General has argued that the conduct complained of is already outside the reach of the applicable statute of limitations. The additional passage of time occasioned by requiring Plaintiff Relator to refile would certainly amplify this argument. Accordingly, the first factor weighs strongly in favor of the Court exercising its discretion to grant an extension of time to perfect service here. In addition, because this is a *qui tam* action where the government remains the real party in interest and stands to receive 70-75% of any recovery, the policy preference for resolving disputes on their merits should weigh especially heavily. *U.S. ex rel. Milam v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 50 (4th Cir. 1992) ("We hold that the United States is the real party in interest in any False Claims Act suit").

### ii. The lack of prejudice supports an extension of time

The second factor similarly weighs in favor of granting an extension of time. Although Moving Defendants other than RC General baldly assert the several-day delay in service caused

13

some nebulous prejudice, that is obviously not the case. No Moving Defendant has submitted

any evidence or even cogent argument to support any claimed prejudice. And how could they?

There is no reason to believe that a three-day delay in service of a complaint in 2022 addressing

conduct from 2013 and 2014 would make any difference in any litigant's ability to formulate a

defense.[10]

For their part, Moving Defendants other than RC General waive at prejudice generally

but mostly focus attention on the statutory scheme by which FCA cases are sealed for potentially

long periods of time. (Dkt. No. 34 at 11, Dkt. No. 35 at 17, Dkt. No. 56 at 4). No Defendant is

able to assert the short delay in service resulted in the destruction of loss of  any evidence during

the delay between February 1, 2022 and February 4, 2022 or February 1 and February 28, when

they received actual notice of the suit. It is similarly "unclear how [any] defendant would suffer

prejudice from extending plaintiff's time to serve." *Blaylock*, 2020 WL 3979667, at *2 (holding

"the inherent prejudice in having to defend the suit" after a "45-day extension [which] is not a

lengthy extension" insufficient to prevent exercise of discretion and granting of extension);

*Gabbidon v. Wilson*, 2020 WL 1312871, at *3 (same but granting 90 day extension); *see also*

*Lamb*, 2020 WL 2495137, at *1 (excusing 64 day delay and finding no prejudice); *Bruce*, 2008

WL 4763274, at *1 (excusing delay of nearly a year).

### iii.   *Defendants' receipt of actual notice supports an extension of time*

The third factor, actual notice of the suit, also weighs in favor of granting an extension.

The Hospital, RC General, and Ms. Casdorph received actual notice of the suit no later than

---

[10] The same argument and logic apply to M&L Electric and Mr. Nary for whom the original service delay was marginally longer.

February 4, 2022 while M&L Electric and Mr. Nary received actual notice no later than February 28 – all within the 120 days previously provided by the Rule. Accounting for the delay occasioned by the Court's closure and COVID mitigation protocols, the delay experienced by the Hospital, RC General, and Mr. Casdroph was only one day. This is a de minimis delay. *Ex rel. Maharaj*, 427 F. Supp. 3d at 654 (describing a one-day delay as "de minimis" and collecting cases); *accord Cox v. Babcock & Wilcox Const. Co.,* No. CIV. A. 5:09CV84, 2009 WL 3764831, at *4 (N.D.W. Va. Nov. 9, 2009) (J. Stamp). Mr. Casdorph asserts the Government undertook an "extensive investigation regarding the claims outlined in Plaintiff's *qui tam* Complaint." (Dkt. No. 34 at 2). There is reason to believe Defendants had functional knowledge of suit even before the Complaint was unsealed.[11]

### iv. *Plaintiff perfected service before filing this brief which supports an extension of time*

The final factor, whether Plaintiff eventually effected service, also weighs in favor of granting an extension here. There is no dispute that Defendant RC General was served on February 4, 2022. The Hospital, Mr. Casdorph, M&L Electric, and Charles Nary however, dispute the manner of service they received. Plaintiff Relator has cured that defect by directing re-serving each of them in advance of filing this Memorandum in Opposition. (Dkt. Nos. 59-63). As noted above, confirmation of re-service on Mr. Casdorph is pending.

---

[11] For example, Defendant Casdorph claims he "did not receive precise notice of the allegations against him and did not know the identity of the Relator (Plaintiff) until" he received a copy of the First Amended Complaint on February 4, 2022. (Dkt. No. 34 at 11). This comes very close to admitting Mr. Casdorph had actual notice of the claims against him before February 4, 2022. In addition, the identity of the Relator is of little moment since her identity has little to do with the allegations against Defendants or the preparation of a defense given that the United States is the real party in interest. *U.S. ex rel. Milam*, 961 F.2d at 50.

15

    ***v.***    ***Plaintiff Relator acted in good faith which weighs in favor of an extension of time***

Contrary authorities can be factually distinguished. For example, the Court refused to exercise its discretion and extend the service deadline in *Pennington v. Mercer Cty. Comm'n*, in large part because "the delay was intentional." No. CV 1:21-00070, 2021 WL 2163607, at *3 (S.D.W. Va. May 27, 2021). The plaintiff's lawyer in *Pennington* sought to game the deadlines for motion practice and held back service so responses would be due at a time more convenient for his schedule. *Id.* at *1. There are no similar facts here.

In *Field v. Phillip Morris, USA, Inc.,* No. 2:19-CV-36, 2021 WL 289356, at *2 (N.D.W. Va. Jan. 28, 2021) (J. Kleeh) (cited by Defendants RC General and the Hospital), the plaintiff failed to make service under Rule 4 and the Court entered an Order granting a 90-day extension of time to accomplish service. Still, plaintiff failed to make service and the Court declined to grant a **second** extension of time. *Id.* The present case is materially different as Plaintiff Relator is seeking a **first** discretionary extension of time to complete service.

*Arrick v. Fed. Bureau of Prisons*, also cited by Defendants RC General and the Hospital, is even less applicable here. No. 1:17CV131, 2019 WL 8301052, at *22 (N.D.W. Va. Dec. 10, 2019), *report and recommendation adopted*, No. 1:17-CV-131, 2020 WL 1472243 (N.D.W. Va. Mar. 26, 2020) (J. Kleeh). In *Arrick*, a *pro se* prisoner plaintiff filed suit naming John/Jane Doe "Unknown Corrections Officers". *Id.* at *22. The Court ordered Arrick to identify the unknown defendants within 30 days. *Id.* Arrick named only one person "and … made no attempt to provide information regarding any others since. Accordingly, service could not be effectuated on any other John/Jane Doe defendants." *Id.* Then, **nearly two and a half years later**, Magistrate Judge Aloi recommended the Court dismiss the **still unidentified** additional defendants. *Id.* The present facts could hardly be more different. Again, this is the first request for a discretionary

16

extension of time to account for a 3-day delay. There has not been over two years of lack of diligence in even identifying much less serving any defendant.

Because every factor weighs in favor of the Court exercising its discretion and permitting a brief extension of time for Plaintiff Relator to perfect service on Defendants, Moving Defendants' motions to dismiss should be denied. The Court should exercise its discretion to permit Plaintiff Relator an extension of time to perfect service upon all Defendants.

**III.    The FAC Should Not be Dismissed for Lack of Prosecution.**

Moving Defendants also seek dismissal of the FAC under Rule 41 for failure to prosecute. However, completing service several days after the deadline set out in Rule 4(m) is hardly evidence of failure to prosecute and the Court should deny this portion of Moving Defendants' motions as well. This point is well made by the cases cited by Moving Defendants in their memorandum.

For example, in *Hill v. Berryhill*, a *pro se* plaintiff brought a social security appeal and, on December 14, 2018, was ordered to file a summary judgment brief in accordance with Local Rule 9.02 which provides a 30 day deadline. No. 1:18-CV-167, 2019 WL 3034671, at *2 (N.D.W. Va. July 11, 2019) (J. Kleeh). The magistrate then granted three of four requested extensions expanding the time for the plaintiff to file her brief from January 14, 2019 to June 10, 2019. *Id.* The magistrate only recommended dismissal for failure to prosecute after denying the plaintiff's fourth motion for an extension of time which itself was filed nearly five months after the original briefing deadline and nearly seven after the Commissioner answered the complaint and served the plaintiff with the materials necessary to compose the required brief. *Id.* This dramatic delay, amounting to more than half a year, is worlds different than the 3-day delay complained of here.

17

Defendants also cite *Chandler Leasing Corp. v. Lopez*, for the four-part test used to determine if a party has failed to prosecute their cause. 669 F.2d 919 (4th Cir. 1982). In *Chandler*, the case was transferred from the Northern District of Illinois to the Eastern District of North Carolina whereupon the Clerk sent a letter seeking the name of local counsel for each party. *Id.* at 920. After the plaintiff failed to respond, the Court entered an order giving Chandler 20 days to hire local counsel. *Id.* After that deadline passed without response, the Court entered an order giving Chandler an additional 10 days to comply. *Id.* After again receiving no response the Court dismissed the complaint. *Id.* The Fourth Circuit reversed and "remand[ed] to the district court to allow the appearance of local counsel for the plaintiff" after finding the record devoid of evidence that Chandler was deliberately dilatory. *Id.* at 921.

In passing on the *Chandler* case, the Fourth Circuit utilized the below four-part test to determine the appropriateness of dismissal as punishment for delay.

> (1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of 'a drawn out history of deliberately proceeding in a dilatory fashion,' and (4) the existence of a sanction less drastic than dismissal.

*Hill*, 2019 WL 3034671, at *3 citing *Chandler*, 669 F.2d at 920. In *Hill*, these factors all weighed in favor of dismissal. The Plaintiff was *pro se* and uniquely individually responsible for the delay she herself repeatedly sought. *Id.* She was on notice that failure to file her brief would result in dismissal. *Id.* Her conduct caused substantial delay and unnecessary costs for the Defendant. *Id.* at *4. She was given substantial extra time to file her brief sufficient to amount to dilatory conduct. *Id.* And finally, the Court determined no other sanction would be effective given the

plaintiff's "lack of compliance **over a significant period of time**." *Id.* (emphasis added).[12] The opposite is true in this case.

A. **The Chandler Factors Uniformly Weigh Against Imposition of Any Sanction Here**

Here, in contrast, each of the *Chandler* factors weigh against imposition of any sanction and certainly against dismissal. First, and to its credit, the Hospital acknowledges[13] Relator Plaintiff does not bear any *personal* responsibility for her prior counsel's errors in perfecting proper service by the deadline imposed by Rule 4(m).

Second, as discussed above, there is no appreciable prejudice to any Defendant occasioned by the service irregularities at issue here.

Third, there is no drawn-out history of dilatory conduct here. This case is in its infancy. Even if a litigant wanted to be dilatory – and there is no indication that any litigant has been – the nascent state of the litigation means there has been no opportunity to accumulate the history of delays normally considered sufficient to merit dismissal for failure to prosecute.

---

[12] As the Court summarized:

> Plaintiff is solely responsible for her conduct in this case, and Defendant has been prejudiced by having devoted resources to this litigation to secure an expeditious resolution. There also exists a documented history of delay in this case, and the Court is not certain that Plaintiff has adequately kept it informed of her address given her claim that she has not received documents accepted for delivery by Certified Mail to her address on file.

*Hill*, 2019 WL 3034671, at *5.

[13] "Under the first factor—plaintiff's personal responsibility—it is unclear the extent to which Relator was involved in the timing and technical aspects of service." (Dkt. No. 35 at 16).

19

Defendants' feeble attempt to recast the filing of an amended complaint as evidence of delay or dilatory conduct should not be credited. Relator Plaintiff filed her FAC as a matter of right under Rule 15(a)(1)(B). Defendants point to no authority for the proposition that filing an Amended Complaint qualifies as a "long history of delay." In addition, the government has since filed a notice of declination to intervene with respect to all of the claims asserted in the FAC. (Dkt. No. 57). As the real party in interest, if the government believed filing the amended complaint in some way vitiated the FCA's statutory scheme, it could have moved to dismiss – it did not. 31 U.S.C. § 3730(c)(2)(A); *Ex rel. Milam*, 961 F.2d at 50 ("We hold that the United States is the real party in interest in any False Claims Act suit"); *see also U.S. ex rel. Ubl v. IIF Data Sols.*, No. CIV.A. 1:06-CV-641, 2009 WL 1254704, at *3 (E.D. Va. May 5, 2009) (filing unsealed amended *qui tam* complaint after declination not grounds for dismissal).

Defendants' citation to *United States ex rel. Drake v. Norden Sys.*, 375 F.3d 248 (2d Cir. 2004) on this point is particularly confusing because there the Second Circuit reversed dismissal of a *qui tam* Relator's Amended Complaint despite a **17-month delay**.

In response to the original motion to dismiss in *Drake*, the District Court had dismissed several claims for lack of specificity. *Id.* at 253. The Second Circuit did not permit the reinstatement of those claims. *Id.* at 258. But that is not the situation presented by the case at bar. There have been no judicial decisions about the sufficiency of any allegations so there has been no "long delay" in clarifying for Defendants the allegations they must meet.

As a practical matter, any discussion about the propriety of the FAC is much ado about nothing. The period during which the case was sealed by operation of statute and Court Order can hardly be charged against Plaintiff Relator as delay or dilatory conduct. There can be no actionable "delay" occasioned by the normal operation of a statute or the Federal Rules.

Indeed, each Defendant appears to argue they lacked actual notice of this suit until after the FAC was served on them in February 2022. As such, it is immaterial that some, but not all, allegations were originally filed under seal with the Court in December 2018. Stated otherwise, their position would not be materially different if no amended complaint had been filed and the third *Chandler* factor would still weigh against dismissal.

Fourth, in the event some sanction is required, sanctions short of dismissal are available. *Chandler*, 669 F.2d at 921.

### B.     The Lack of Any Explicit Warning Requires Denial of Defendants' Motion to Dismiss

In addition to the *Chandler* factors which uniformly weigh against imposition of any sanction here, the Fourth Circuit has also cautioned that "the four factors discussed in *Chandler* are not a rigid four-prong test. Rather, the propriety of a dismissal of the type involved here depends on the particular circumstances of the case." *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989). Consideration of the totality of the circumstances and the other factors considered by the Fourth Circuit also weigh against imposition of any sanction and certainly against dismissal.

Perhaps most importantly, the Fourth Circuit has repeatedly admonished that "an explicit and reasonable warning" should be issued before dismissing a case for want of prosecution. *Hill*, 2019 WL 3034671, at *4 citing *Ballard*, 882 F.2d at 95 ("[W]e think the Magistrate's explicit warning that a recommendation of dismissal would result from failure to obey his order is **a critical fact** that distinguishes this case from those cited by appellant.") (emphasis added). In addition to explicit warnings, the Fourth Circuit has repeatedly emphasized the importance of "a long history of delay" when weighing the appropriateness of dismissal under Rule 41 or the inherent power of the courts. *Davis v. Williams*, 588 F.2d 69, 71 (4th Cir. 1978); *see also Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir.1986) (noting importance of warning

21

prior to dismissal) (cited by Ballard, 882 F.2d at 96); *Black Water Marine Explorer LLC v. Unidentified Shipwrecked Vessel or Vessels*, 714 F. App'x 296, 297 (4th Cir. 2018) (reemphasizing the importance of explicit warnings and affirming dismissal after approximately **three-year** delay).

The Fourth Circuit has been rather clear that the policy of deciding cases on their merits requires truly explicit warnings and clear history of delay or contumacious conduct before dismissal.

> [W]e have long adhered to the sound public policy of deciding cases on their merits and not depriving ... parties of their fair day in court. This policy of deciding cases on their merits is so strong that, when a plaintiff has committed a procedural error, we will allow a district court to impose on him the harsh sanction of prejudicial dismissal only in the extreme cases where the plaintiff has shown a clear record of delay or has engaged in contumacious conduct. Requiring district courts to provide explicit and clear notice when they intend to dismiss the plaintiff's action with prejudice if he fails to satisfy its conditions promotes our strong preference that cases be decided on their merits. Such notice of this drastic consequence is likely to prompt most plaintiffs to act diligently in meeting these conditions, thereby averting prejudicial dismissal. At the same time, by prompting such diligence, this clear and explicit notice will further the smooth functioning of the judicial process.

*Choice Hotels Int'l, Inc. v. Goodwin & Boone*, 11 F.3d 469, 471–72 (4th Cir. 1993) (extensive quotations and citations omitted); *see also* Local R. Civ. P. 41.01 (contemplating notice and order to show cause prior to dismissal for failure to prosecute).

Here there was no explicit warning, there is no "long history of delay," and there is no contumacious conduct. The Court must deny Defendants' motion to dismiss under Rule 41 and the Court's inherent power.

## IV.    The FAC is Not Subject to Dismissal Under the Applicable Statute of Limitations.

Defendant RC General raises the additional argument that Plaintiff Relator's claims are barred by the statute of limitations, but the claims raised in the FAC are timely and not subject to

dismissal. First, the applicable statute of limitations has not yet run. Second, even if the applicable statute had run, the allegations in the FAC relate back to the original Complaint about which there is no timeliness dispute. Third, even if the statute of limitations has run, Plaintiff Relator is entitled to equitable tolling as a result of Defendants' many attempts to coverup and hide their unlawful conduct.

As an initial matter, it must be recognized that "a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, and the burden of establishing the affirmative defense rests on the defendant. *Goodman*, 494 F.3d at 464 (quotation and citations omitted). As a result, a defendant generally cannot prevail on a motion to dismiss based on a statute of limitations unless the required "facts sufficient to rule on an affirmative defense are alleged in the complaint…" *Id.* And even then, all facts necessary to the affirmative defense must "clearly appear *on the face of the complaint*." *Id.* (emphasis original). No such facts appear on the face of the FAC.

### A.   The Applicable Statute of Limitation has Not Expired

The United States Supreme Court recently settled how the statute of limitations written into the FCA is to be applied. *See gen., Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019). The Court clarified that a *qui tam* Relator may take advantage of the entire statute of limitations period set out at 31 U.S.C. § 3731(b). *Id.*

(b) A civil action under section 3730 may not be brought—

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States

charged with responsibility to act in the circumstances, but in no event more than
10 years after the date on which the violation is committed,

whichever occurs last.

31 U.S.C. § 3731(b).

In other words, a *qui tam* complaint is timely if less than six years have passed since the
violation **OR** if less than three years have passed since "facts material to the right of action are
known or reasonably should have been known by the official of the United States charged with
responsibility to act in the circumstances" so long as less than ten years have passed since the
violation.[14] *Id.* The government's intervention decision is not relevant to this analysis. *Cochise*,
139 S. Ct. at 1512 ("There is no textual basis to base the meaning of "[a] civil action
under section 3730" on whether the Government has intervened.").

For example, in *Cochise*, the *qui tam* relator had an interview with the government on
November 30, 2010, during which he disclosed frauds which occurred in early 2007. 139 S. Ct.
at 1511. He filed his *qui tam* action on November 2013. *Id.* Because the government could first
be charged with knowledge of the material facts only after the 2010 interview, the qui tam action
was held timely filed despite coming more than six years after the violations at issue. *Id.* at 1514.

The violations at issue here occurred in 2013 and 2014 – less than ten years before the
FAC was filed on January 31, 2022. The FAC was clearly filed more than six years after the
violations  at issue. However, there is no indication "on the face of the Complaint" or the FAC,
when "facts material to the right of action are known or reasonably should have been known by
the official of the United States charged with responsibility to act in the circumstances." 31

---

[14] The status of the government's intervention decision has no bearing on the calculation or
application of the limitations period. *Cochise*, 139 S. Ct. 1507.

U.S.C. § 3731(b); *Semenova*, 845 F.3d at 567 ("A court may grant a 12(b)(6) motion on statute

of limitations grounds only if the time bar is **apparent on the face of the complaint**.")

(emphasis added).

RC General's "assumption" that the three-year statute of limitation set out in 31 U.S.C. §

3731(b)(2) began to run on the date the original Complaint was filed has no basis in the record or

the law. (Dkt. No. 37 at 4). Indeed, because service of original *qui tam* complaints upon the

government occur via certified mail, we know at a minimum that the government did **not** receive

notice of the complaint on the day of filing. But even the date of service of the original

Complaint upon the government is not the final answer to the statute of limitations question here.

RC General finds itself in a catch 22 of its own making. If the original Complaint

disclosed enough information to provide the government knowledge about the allegations in the

FAC so as to trigger the running of the three-year statute of limitation, then the allegations in the

FAC clearly relate back to the original Complaint and the FAC is therefore timely. Alternatively,

if the original Complaint did not so disclose the material facts alleged in the FAC, then there is

no basis in the record[15] for the Court to determine when the government received notice of these

---

[15] To be clear, there is no information on the Docket, on the face of the original Complaint, or the
face of the FAC to indicate when the government received service of the original Complaint or
Relator's disclosure, any supplemental disclosures, or the date of any interviews conducted with
Relator. The only information available to the Court is Docket entry 13, the government's first *ex
parte* application for an extension of the seal in this case filed on November 2, 2020. The Court
could reasonably assume the government had by then received a copy of the original Complaint.
Of course, the FAC was filed less than three years after November 2020.

Other than Docket entry 13, there is simply no information available to the Court about "the date
when facts material to the right of action [was] known or reasonably should have been known by
the official of the United States charged with responsibility to act in the circumstances when the
government." 31 U.S.C. § 3731(b)(2). There is no basis for the Court to dismiss the FAC as
untimely.

materials facts. Indeed, the only information available to the Court at this early stage is that the

Government received notice of the facts and allegations in the FAC when it received ECF

service of the FAC on January 31, 2022 – less than ten years after the violations at issue. There is

simply no basis for the Court to dismiss the FAC as untimely.

**B.      The FAC Relates Back to the Original Complaint and is Therefore Timely**

Rule 15 permits the filing of amended complaints and directs that later filed amended

complaints relate back to earlier filed pleadings for statute of limitations purposes when "the

amendment asserts a claim or defense that arose out of the **conduct, transaction, or occurrence**

set out--or attempted to be set out--in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B)

(emphasis added).

"The basic inquiry is whether the amended complaint is related to the general fact

situation alleged in the original pleading." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1543

(8th Cir. 1996). "Thus, even an amendment that proposes an **entirely different theory of**

**recovery** will relate back so long as the new legal theory arises out of the same core facts as the

original pleading." *Tucker v. Momentive Performance Materials USA Inc.*, No. 2:13-CV-04480,

2013 WL 6073463, at *2 (S.D.W. Va. Nov. 18, 2013) (emphasis added) citing *Bularz v.*

*Prudential Ins. Co. of Am.,* 93 F.3d 372, 379 (7th Cir.1996); *Fed. Deposit Ins. Corp. v. Bennett,*

898 F.2d 477, 479–480 (5th Cir.1990).

The Fourth Circuit has held "Rule 15(c) must be understood to freely permit amendment

of pleadings and their relation-back so long as the policies of statutes of limitations have been

effectively served." *Goodman*, 494 F.3d at 468 citing 3 James Wm. Moore, et al., *Moore's*

*Federal Practice* § 15.19[3][a] (3d ed. 1997) ("The purpose of Rule 15(c) is to provide the

opportunity for a claim to be tried on its merits, rather than being dismissed on procedural

26

technicalities, when the policy behind the statute of limitations has been addressed"). "The rule

in the Federal Courts as to 'relation back' is **exceedingly liberal**." *Davis v. Yellow Cab Co.*, 35

F.R.D. 159, 161 (E.D. Pa. 1964) (emphasis added).

The Fourth Circuit directs the Court to consider two issues when applying Rule 15(c):

First, to relate back there must be a factual nexus between the amendment and the
original complaint. Second, if there is some factual nexus an amended claim is
liberally construed to relate back to the original complaint if the defendant had
notice of the claim and will not be prejudiced by the amendment.

*Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983), *aff'd,* 468 U.S. 42 (1984) (citations

omitted).[16]

Here, there is more than a factual nexus. The "conduct, transaction, or occurrence" at

issue here is the same in the original Complaint as in the FAC: Defendants participated in the

construction or refurbishment of the Highland-Clarksburg Hospital using funds provided by the

government. Their improper conduct during that project resulted in the submission of false

claims to the government. The original Complaint alleged that Defendants submitted false claims

related to the project and their related party transactions and the FAC clarified that only a subset

of those claims and certifications were improper and actionable. (*Compare* Dkt No. 1 at ¶¶ 97-

106, 109-117; 120-123 and Dkt. No. 22 at ¶¶ 210-219, 222-227, 229-233). The "transactions"

are identical. *See Grattan*, 710 F.2d at 163 (holding discrimination and arbitrary dismissal claims

to share a factual nexus because "in both the termination was the ultimate wrong of which they

complained.").

---

[16] The applicability of Rule 15(c) is entirely divorced from any considerations of delay, dilatory
conduct, or the amending party's knowledge – relation back is mandatory where the factors
listed in the Rule exist." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 552-53 (2010).

The additional allegations in the FAC add detail and specificity about the exact claims and dollars at issue but the "conduct, transaction, or occurrence" at issue has not changed. In fact, the FAC, **restricts** the universe of false claims (and the associated damages) by zeroing in on specific claims and certifications. (*See gen.,* Dkt. No. 22 at § IV).[17] A much smaller number of claims and certifications are at issue in the FAC. The additional data provided in the FAC will enable the Court and the litigants to dispose of the merits of this dispute more efficiently but there can be no serious doubt that both complaints relate to the same "general fact situation": the construction work on the hospital and the submission of claims for government funds related to that work. *Alpern*, 84 F.3d at 1543.

Nor can Defendants reasonably complain about any prejudice. This is not a case where Defendants were put on notice of one set of claims at the filing of the Complaint and then learned much later that entirely different and unrelated claims were also at issue. In fact, by operation of the statutory seal, Defendants most likely received notice of the original Complaint and the FAC in reverse order as only the FAC was served.

RC General's citation to *Moyle v. Felix*, 545 U.S. 644, 648 (2005), is inapposite. The decision in *Moyle* "turn[ed] on the meaning of Federal Rule of Civil Procedure 15(c)(2)'s relation-back provision **in the context of federal habeas proceedings and AEDPA's one-year statute of limitations**." *Id.* at 656 (emphasis added). Moyle's late amended petition raising a Fifth Amendment challenge to his interrogation was held not to relate back to his timely petition

---

[17] Stated another way, every claim for payment and certification made during the pendency of the project was at issue in the original Complaint. There are **no new** claims or certifications at issue in the FAC that were not referenced in the original Complaint.

addressing a Sixth Amendment challenge to the use of videotaped witness testimony during his trial.

Essentially, the Court determined criminal trials and convictions themselves could not be the "transaction" or "occurrence" which tied together two habeas petitions. *Id.* at 664. For the purposes of "[a]n **amended habeas petition**", the Court held a late petition "does not relate back … when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650 (emphasis added).

The new "time and type" language does not appear in the Rule and should be understood as limited to the application of Rule 15(c) to habeas petitions. As the Court noted, Habeas proceedings are subject to a meaningfully different and unique pleading standard. *Id.* at 654. Indeed, there is no Fourth Circuit opinion citing *Moyle* outside of the habeas or 28 U.S.C. § 2255 context. And, several years after *Moyle*, the Supreme Court reiterated the plain, and liberal, application of Rule 15(c) in *Krupski*, 560 U.S. 538, without any mention of the "type and time" language. Instead, as the *Moyle* court itself noted, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." [18] *Id.* Just so here.

Because the FAC relates back to the original Complaint, the Court must deny RC General's motion to dismiss.

---

[18] Even if the language from *Moyle* did apply, the claims at issue in the FAC are the same **type** (claims for government funds and certifications in support of the same) and the same **time** (during the construction work at the hospital) as were at issue in the original Complaint. Indeed, literally the same claims and certifications are at issue in both complaints.

**C.      The Fraudulent Concealment Tolling Doctrine Prevents Defendants from Raising a Statute of Limitations Defense Here**

Defendants may not raise the statute of limitations as a shield where, as here, they have fraudulently concealed the very facts they assert Plaintiff Relator should have earlier discovered.

> The purpose of the fraudulent concealment tolling doctrine is to prevent a defendant from concealing a fraud, or committing a fraud in a manner that it concealed itself until the defendant could plead the statute of limitations to protect it. Thus, pursuant to this doctrine, when the fraud has been concealed or is of such a character as to conceal itself, and the plaintiff is not negligent or guilty of laches, the limitations period does not begin to run until the plaintiff discovers the fraud.

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) (internal quotation and citation omitted). As the Supreme Court has directed and the Fourth Circuit has recognized, "[t]his equitable doctrine is read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) cited by *Supermarket of Marlinton*, 71 F.3d at 122. *See also United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 194 (D. Md. 2019) (recognizing application of equitable tolling doctrine to False Claims Act cases and refusing to dismiss claims). "It would be anomalous and inconsistent with the legislative scheme to allow defendants to avoid liability merely by further concealment of their wrongdoing beyond the six-year period in which the government must bring its suit." *United States v. Uzzell*, 648 F. Supp. 1362, 1367 (D.D.C. 1986) (applying equitable tolling in False Claims Act case).

In order to gain the application of the fraudulent concealment tolling doctrine, Plaintiff Relator must make a showing that "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019).

The acts of concealment sufficient to trigger application of the doctrine may be the same as the fraudulent acts which form the basis for the cause of action. *Id.* at 553. "A plaintiff satisfies its burden to allege an affirmative act of concealment if, for example, it alleges that the defendant employed "some trick or contrivance intended to exclude suspicion and prevent inquiry." *Id.*

Here, Plaintiff Relator included an entire subsection in the FAC devoted to the attempted cover up of at least a portion of the fraud. (Dkt. No. 22 at § IV(F)(i)). And the FAC is otherwise replete with allegations that Defendants falsely certified that they had completed work which had not been completed or were otherwise entitled to payment of funds they were not. (*See gen.,* Dkt. No. 22 at § IV). Just as importantly, Defendants failed and refused to properly disclose the many conflicts of interest amongst themselves which might have tipped the government or Plaintiff Relator off to examine the other papers and accounts more aggressively for the types of false claims that were eventually found. (*See* Dkt. No. 22 at § III).

"Generally, whether a plaintiff exercised due diligence is a jury issue not amenable to resolution on the pleadings or at summary judgment." *Edmonson*, 922 F.3d at 554 (collecting cases). However, the Fourth Circuit

> long has held that it is possible for a plaintiff to satisfy the due diligence requirement without demonstrating that it engaged in any specific inquiry. If the plaintiff establishes that it was not (and should not have been) aware of facts that should have excited further inquiry on its part —if the plaintiff was not on inquiry notice — then there is nothing to provoke inquiry.

*Id.*

That is exactly the situation confronting the Court here. Especially given Defendants' actions to conceal the many interrelations between themselves, there was nothing here to provoke Plaintiff Relator (or the government) to inquire into the propriety of Defendants' many

false claims and certifications. As described in the FAC, uncovering the many instances of

double-billed or otherwise wrongly billed funds (and the other associated false certifications and

documents) required comparing and contrasting myriad documents signed by Defendants, the

actual accounting and bank information which reflects the movement of funds, and other internal

documents created by Defendants to document or obscure the actual movement of funds. Given

Defendant's many obfuscating actions and allegedly false documents, there was simply no

reason for Plaintiff Relator to have earlier undertaken this herculean task. "Put simply,

the fraudulent concealment doctrine requires *reasonable* diligence." *Id.* at 555 (holding

individual was not obligated to comb through files to find the fraud without a prompt to do so).

Plaintiff Relator exercised reasonable diligence here.

For this additional and alternative reason, the Court must deny RC General's motion to

dismiss the FAC as untimely.

## V.     The First Amended Complaint Meets the Pleading Standard of Rule 9(b).

RC General argues that the FAC must be dismissed as insufficiently pleaded under Rule

9(b). Not so. The main thrust of RC General's argument appears to be that as a subcontractor on

a larger government funded construction project, RC General had no direct interaction with the

government and therefore cannot be responsible for any claims made to the government. The

United States Supreme Court long ago flatly rejected this argument.

"It is settled that the Act permits recovery of multiple forfeitures and that it gives the

United States a cause of action against a subcontractor who causes a prime contractor to submit

a false claim to the Government." *United States v. Bornstein*, 423 U.S. 303, 309 (1976). Indeed,

the concept that subcontractors who fraudulently take government monies through an

intermediary are liable under the FCA traces its roots to the original 1863 bill. *See U. S. ex rel.*

32

*Marcus v. Hess*, 317 U.S. 537, 544 (1943) (explaining that defendants can be liable for violation of the FCA when they fraudulently obtain government monies held by intermediaries including states and grant recipients) (superseded by statute on other grounds); *see also Tanner v. United States*, 483 U.S. 107, 129 (1987) (restating the holdings in both *Bornstein* and *Marcus* as "we recognized that the fact that a false claim passes through the hands of a third party on its way from the claimant to the United States does not release the claimant from culpability under the Act.").

In 2008, the United States Supreme Court unanimously reaffirmed this reading of the FCA and held "a subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim." *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 671 (2008). The Fourth Circuit has similarly rejected any "privity" requirement holding that although "a subcontractor is by definition not in privity with the U.S. government" it may still be liable under the FCA. *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 562 F.3d 295, 304 (4th Cir. 2009) (also noting that "So long as *any portion* of the claim is or will be funded by U.S. money *given to the grantee,* the full claim satisfies the definition of claim as used in" the FCA) (emphasis original).

District Courts have also rejected RC General's argument. For example, in *United States v. Sequel Contractors*, Inc., 402 F. Supp. 2d 1142, 1149 (C.D. Cal. 2005), the defendants' argument was strikingly similar to RC General's argument here:

> Defendants argue that the SAC fails to state a claim under the FCA for two reasons: (1) the SAC does not allege that Defendants themselves directly presented a false claim to the federal government, and (2) the SAC does not allege that Defendants knew that the claims would be submitted to the federal government.

*Id.* at 1149 (denying motion to dismiss on these grounds).

With this background, it is clear the FAC meets the Rule 9(b) pleading standard set out in *Grant*, 912 F.3d at 197, *Nathan*, 707 F.3d at 457, and *Bunk*, 842 F.3d at 275.

The FAC sets out a number of false statements and certifications made by RC General for the purposes of obtaining money to which it was not entitled. (Dkt. No. 22 at §§ IV.(A), (D), (F), and (H). In addition, as the prime contractor and a coconspirator, each of the other false claims identified in Section IV of the FAC passed through RC General's hands.

Each of the specific amounts of double or excess billed funds were accompanied by a myriad of false certifications and false statements. (Dkt. No. II.(A)). As a large construction project, prime and subcontractors had to submit pay applications or requisition forms to get paid for newly completed work. Each "new" form included information about prior completed and prior paid work. In this way, after making an initial request for monies to which they were not entitled, Defendants continually submitted documents attesting to the receipt of those funds as if they were entitled to the money when they were not. (*See e.g.,* Dkt. No. 22 at ¶ 148 ("Each certification and request for payment signed, submitted, or caused to be submitted by Defendants and referencing a portion of this double payment is a false claim or document in support of a false claim.")). In fact, each of the Applications for Certifications for Payment are directed to RC General as the owner's representative. (*See e.g.,* Dkt. No. 22-22). A number of the false statements and certifications were included as exhibits to the FAC.

The FAC describes that the USDA issued loans which were administered by Huntington National Bank and used to pay for the construction work at the hospital. After construction was complete, the USDA issued a new loan facility that paid for all outstanding construction costs and provided an additional $1.5 million in operating capital. These are the funds the Defendants

34

unlawfully took. The funds were routed from the USDA to the Bank, from the Bank to the Hospital and from there administered and doled out by RC General and Defendant Casdorph. RC General is related to Mr. Cassdorph. (Dkt. No. 81-92). The fact that RC General was requesting specific payments from Mr. Cassdorph or the Hospital or that they in turn drew money out of accounts held at the Bank is of no moment. *Tanner*, 483 U.S. at 129.

The Complaint explicitly alleges that Defendants "knowingly presented or caused to be presented, false or fraudulent claims to the USDA for payment or approval, within the meaning of 31 U.S.C. § 3729(a)(1)(A)." (Dkt. No. 22 at ¶ 217). That Defendants "conspired to claim payments from the USDA guaranteed loan funds and USDA direct loan funds." (Dkt. No. 22 at § 231). That Defendants' many false statements "had a natural tendency to influence the USDA decision whether to extend loan guarantees and pay out direct loan funds." (Dkt. No. 22 at § 216). And the FAC specifically alleges that the USDA would not have "paid or permitted the payment of the funds complained of above and would not have done so but for Defendants' unlawful conduct." (Dkt. No. 218, 226, 232).

In other words, the FAC clearly alleges Defendants' actions "would *necessarily* have led to submission of false claims to the government for payment." *Grant*, 912 F.3d at 197 (emphasis original). First, the original USDA loan funds would not have been consumed if not for Defendants' false claims. In addition, absent Defendants' many false certifications and claims, the project would have consumed meaningfully less money during construction and thereby reduced the amount of the post construction USDA loan. In other words, the FAC describes how Defendants' false claims consumed government funds that would not otherwise have been consumed. Each request for disbursement of funds that originated with the USDA is a claim for government funds and each of the challenged payments to, and request for payments submitted

35

by, Defendants **necessarily** correlated with a disbursement of USDA funds. Under *Grant*, this is more than enough to "connect the dots" between Defendants' actions and the more direct claims for government payment. *Id.* at 199. Certainly, the Court cannot dismiss the FAC given the substantial indicia of reliability that a claim was "likely submitted or should have been submitted to the Government." *Nathan*, 707 F.3d at 457. Relator has already adduced substantial prediscovery evidence of the claims and their falsity making dismissal inappropriate. *Bunk*, 842 F.3d at 275.

In the alternative, to the extent the Court determines more must be alleged connecting Defendants to claims for or actual payments by the government, Plaintiff Relator respectfully requests an opportunity to amend her FAC to so allege.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Relator Nancy Giaquinto, C.P.A. respectfully requests that the Court deny Defendants Michael Casdorph, RC General, Highland Clarksburg Hospital, M&L Electric, and Charles Nary's motions to dismiss, grant Plaintiff Relator additional time to perfect service on all defendants, and direct Moving Defendants to answer the First Amended Complaint within 20 days.

Respectfully submitted,

<u>/s/ Sandra K. Law, Esq.</u>
Sandra K. Law, Esq. (WV Bar 6071)        Darth M. Newman
Schrader Companion Duff & Law, PLLC      Law Offices of Darth M. Newman LLC
401 Main Street                          1140 Thorn Run Rd #601
Wheeling, West Virginia 26003            Coraopolis, PA 15108
Phone: (304)233-3390                     (412) 436-3443
Fax: (304)233-2769                       darth@dnewmanlaw.com
skl@schraderlaw.com                      *Admitted Pro Hac Vice*
                    *Counsel for Plaintiff Relator*

36