IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

UNITED STATES OF AMERICA, ex rel.
NANCY GIAQUINTO, C.P.A.,

      Plaintiff,

v.                                    CIVIL ACTION NO. 1:18-CV-220
                                                (KLEEH)

HIGHLAND-CLARKSBURG HOSPITAL, INC.,
RC GENERAL CONTRACTORS INC.,
M&L ELECTRIC LLC, ASSOCIATED
ARCHITECTS, INC., MICHAEL CASDORPH,
PAUL TENNANT, and CHARLES NARY,

      Defendants.

## OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS

Pending before the Court are Defendant Michael Casdorph's Motion to Dismiss [ECF No. 33], Defendant Highland-Clarksburg Motion to Dismiss [ECF No. 35], Defendant RC General Contractors Motion to Dismiss [ECF No. 36], and Defendant Charles Nary And M&L Electric Motion to Dismiss [ECF No. 55]. The motions are fully briefed and ripe for review. For the reasons discussed herein, each motion is **DENIED**. Plaintiff's motion for extension of time to perfect service is **GRANTED**. ECF No. 66.

## I.   PROCEDURAL HISTORY

On December 10, 2018, Plaintiff and Relator Nancy Giaquinto CPA, on behalf of the United States of America, filed a False Claims Act, 31 U.S.C. § 3729-33, Complaint. ECF No. 1, Compl. On

OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS

March 6, 2019, the United States, by counsel, filed a sealed motion requesting the Court enter an ex parte Order under 31 U.S.C. § 3730(b)(2) granting the United States an extension of time from March 8, 2019, through September 4, 2019, to "notify the Court of its decision regarding intervention in the above-captioned False Claims Act qui tam action." ECF No. 3. The United States also requested the complaint remained filed under seal through September 4, 2019. Id. The Court granted the motion, under seal and ex parte, as to all the relief sought therein. ECF No. 4. The United States, by counsel, filed five (5) additional sealed motions of the same nature, requesting relief and extensions of time pursuant to 31 U.S.C. § 3730(b)(2). ECF Nos. 9, 11, 13, 16, 18. The Court granted each motion by orders entered under seal. ECF Nos. 10, 12, 14, 17, 19.

On November 1, 2021, the United States filed *Notice of Election to Decline Intervention* and requested the Court unseal the case. ECF No. 20. The Court granted the request and unsealed the case. ECF No. 21. On February 31, 2022, Plaintiff and Relator Nancy Giaquinto CPA, on behalf of the United States of America, filed the First Amended Complaint alleging False Claims Act violations, 31 U.S.C. § 3729-33. ECF No. 22, Am. Compl. Defendants now seek to dismiss the Amended Complaint pursuant to Rules 12(b)(5), 12(b)(6) and 41(b) of the Federal Rules of Civil

OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS

Procedure. ECF Nos. 33, 35, 36, 55. The Court will discuss each Motion in turn.

## II.  AMENDED COMPLAINT

In the January 31, 2022, First Amended Complaint, Plaintiff and Relator Nancy Giaquinto CPA, on behalf of the United States of America, ("Plaintiff"), alleges False Claims Act ("FCA") violations against Defendants Highland-Clarksburg Hospital, Inc., RC General Contractors, Inc., M&C Electric LLC, Associated Architects, Inc., Michael Casdorph, Paul Tennant, and Charles Nary. ECF No. 22, Am. Compl., ¶¶ 11-37. Plaintiff alleges Defendants "misdirected and stole over $1 million in construction funds in connection with the government-funded renovation of a community behavioral health hospital." Id. ¶ 2.

### 1. Parties

Nancy Giaquinto, C.P.A., ("Relator") resides in Harrison County, West Virginia, and was employed by Defendant Highland-Clarksburg Hospital, Inc. from July 2013 to March 2015 as the controller, and April 2015 through September 30, 2018, as the Chief Financial Officer. Id. ¶ 7. "Relator sues as the original source of information regarding Defendants' violations of the FCA" and provided the information contained in the Amended Complaint voluntarily. Id. ¶ 8.

Defendant Highland-Clarksburg Hospital, Inc. ("Hospital") is a non-profit corporation organized under West Virginia state laws with a principal place of business in Clarksburg, West Virginia. Id. ¶ 11.

Defendant RC General Contractors, Inc. ("RC General") is a corporation organized under West Virginia state laws with a principal place of business in Clarksburg, West Virginia. Id. ¶ 12. Defendant Michael Casdorph ("Casdorph") is a resident of West Virginia and is the Director, Secretary, Treasurer, and one incorporator of RC General. Id. ¶¶ 13, 16. Casdorph was also "the Director of Facilities and Construction and/or the CEO of the Hospital." Id. ¶ 24. He is also related to other leaders of RC General, such as the Senior Vice President and Secretary (Gregory Casdorph, son), President (Thomas H. Reece, brother-in-law), and Vice President (Brian Harper, nephew). Id. ¶¶ 14-17, 25-28. "Casdorph is also the incorporator of 318 Lee St. LLC which is the landlord for RC General, Associated Architects, Inc., and several other entities owned or managed by Defendants Paul Tennant and Charles Nary and the other individuals who own or manage RC General." Id. ¶ 27.

Defendant M&L Electric LLC ("M&L Electric") is a limited liability company organized under West Virginia state laws with a principal place of business in Big Chimney, West Virginia. Id. ¶ 18. Defendant Charles Nary ("Nary") owns all or part of M&L

OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS

Electric and is the organizer of M&L Electric. Id. ¶¶ 19-20. Nary resides in West Virginia, and "was the electrical contractor for the construction and renovation at issue here." Id. ¶ 35. He co-owns PMC Energy Partners LLC.

Defendant Associated Architects, Inc., ("Associated Architects") is a corporation organized under West Virginia state laws with a principal place of business in Charleston, West Virginia. Id. ¶ 21. Associated Architects is owned in whole or in part by Paul Tennant, President. Id. ¶ 22. Paul Tennant ("Tennant") "was the architect for the construction and renovation at issue." Id. ¶ 30.

## 2. Allegations under the Federal False Claims Act ("FCA")

The Community Facilities Direct and Guaranteed Loan and Grant Program (the "Program") was established by Congress and the USDA. ECF No. 22, Am. Compl. ¶¶ 49-50. The Program provides loan proceeds for certain enumerated costs and expenses, but the use of loan funds details must be described and certified by the loan applicant. Id. at ¶¶ 49-56; 7 CFR Parts 1942 and 3575. The Hospital obtained a total of $34.8 million in direct and guaranteed loans for initial construction. ECF No. 22, Am. Compl. ¶ 62. The Hospital entered into a loan agreement with Huntington Bank for $13.8 million and agreed to "[c]omply in all material respects with all applicable laws, rules, regulations, and orders." Id. ¶¶ 58-59, 60. The construction Loan Agreement provided that furnishing "any

report, certificate, financial statement or other document [that] prove[s] to be false or misleading in any material respect" is an "Event of Default". Id. ¶ 60.

Approximately $21 million was loaned directly by the USDA. Id. ¶¶ 63-64. "After construction was completed or substantially completed, the USDA issued a $29.4 million loan as permanent financing which retired most of the Huntington construction loan, retired and replaced the other direct USDA construction loan, and provided $1.5 million in new direct USDA financing for Hospital operations." Id. ¶ 64.

Upon receiving these funds, the Hospital was required to submit monthly certifications regarding how the funds were being used. Id. ¶ 66. Multiple times, the Hospital certified that "[n]o event has occurred and is continuing which constitutes an Event of Default under the Loan Agreement." Id. ¶ 68. The contractor also had to attest "to having properly performed the work or supplied the materials for which it had already been paid in the past and also recite the total money received to date." Id. ¶ 71. Multiple parties were subject to these requirements to ensure proper use of funds.

Some of the allegations stem from Casdorph's involvement in his several positions within the entity defendants. Casdorph hired the contractors for the Hospital job, including RC General of which he was owner, and his son was Senior Vice President. Id. ¶¶ 79-

**OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS**

83. The Defendants did not follow the necessary procedures for disclosing the conflict of interest or obtain the Government's consent regarding the conflicts. Id. ¶¶ 84-85. Casdorph, Nary, and Tennant jointly own PMC Energy Partners. Id. ¶ 95. M&C Electric, owned by Nary, was the hired electrical contractor for the Hospital job. Id. ¶ 93. "The architect for the project was Associated Architects which is owned by Paul Tennant." Id. ¶ 94.

"Defendants misdirected more than $1 million in government loaned and/or guaranteed funds to themselves and others. Id. ¶ 106. "The total sum of funds taken or misdirected by Defendants was substantial and, according to Defendant Casdorph's own estimations, would have been enough to fund the construction of another entire wing of the hospital." Id. ¶ 107. "Defendants directed payment of $73,567.31 to mechanical prime contractor Dougherty Company Inc. while simultaneously sending a duplicate payment to RC General for the same work." Id. ¶ 110. "[I]n total, RC General received $79,452.69 (the original $73,567.31 plus an 8% fee of $5,885.38)". Id. ¶ 112. Dougherty Company received $73,567.31, directly. Id. ¶ 114.

A double payment was made to Dougherty and Hajoca: a change order was directed at $78,916.96, which Dougherty received in full. Id. ¶ 127. Hajoca was paid $73,948.78 by direct ACH. Id. ¶ 131. Cornerstone Interiors, Inc., was a prime contract for the Hospital job and retained $28,972.24 of over 100K disbursed to it for

project purposes. Id. ¶ 142. The Defendants certified and issued
$18,000.00 in double payment for glass to POW glass and RC General.
Id. ¶¶ 144-148. Graybar, contractor, was contracted to provide
$413,781.07 in goods and services but was paid $785,918.93 and
kept the rest. Id. ¶¶ 149-167. In addition, a payment of
"$401,249.38 which had been handwritten onto the December 2013
waiver and release form as the outstanding contract balance is
nowhere to be found in the January/February 2014 paperwork. Graybar
never acknowledges receipt of the $401,249.38 and it disappeared
from the outstanding contract balance one month after it was
handwritten in. In reality, that $401,249.38 was never paid to
Graybar." Id. ¶¶ 168-170. Relator alleges Fraud as to the following
entities and amounts: Graybar for $410,249.38, M&C Electric for
$230,010.00, and RC General Furniture Assembly for $108,755.98.

### III. <u>LEGAL STANDARD</u>

**A. Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows
a defendant to move for dismissal upon the grounds that a complaint
does not "state a claim upon which relief can be granted." In
ruling on a motion to dismiss, a court "must accept as true all of
the factual allegations contained in the Complaint." <u>Anderson v.
Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007) (quoting <u>Erickson
v. Pardus</u>, 551 U.S. 89, 94 (2007)). A court is "not bound to accept

OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS

as true a legal conclusion couched as a factual allegation."
Papasan v. Allain, 478 U.S. 265, 286 (1986).

A motion to dismiss under Rule 12(6)(b) tests the "legal sufficiency of a Complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). A court should dismiss a Complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The factual allegations "must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 545. The facts must constitute more than "a formulaic recitation of the elements of a cause of action." Id. at 555. A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992).

**B. Rule 9(b) of the Federal Rules of Civil Procedure**

Rule 9(b) of the Federal Rules of Civil Procedure includes a heightened pleading standard for fraud claims. "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the

OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS

time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (internal citation and quotation marks omitted). "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Id. "Malice, intent, knowledge, and other conditions" may be alleged generally. Fed. R. Civ. P. 9(b).

### C. Rule 41(b) of the Federal Rules of Civil Procedure

Both under Rule 41(b) of the Federal Rules of Civil Procedure and the inherent power of the Court, a case may be dismissed with prejudice for want of prosecution. Fed. R. Civ. P. 41(b); Link v. Wabash R.R. Co., 370 U.S. 626, 629-32 (1962)(noting that federal courts have inherent power to dismiss action for failure to prosecute either sua sponte or on party's motion). "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." Link, 370 U.S. at 629. In considering whether to impose such a dismissal, the Court should consider "(1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3)

**OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS**

the existence of 'a drawn out history of deliberately proceeding in a dilatory fashion,' and (4) the existence of a sanction less drastic than dismissal." <u>Chandler</u> <u>Leasing</u> <u>Corp.</u> <u>v.</u> <u>Lopez</u>, 669 F.2d 919, 920 (4th Cir. 1982)(per curiam).

**D. Rules 12(b)(5) and 4 of the Federal Rules of Civil Procedure**

A motion to dismiss for insufficient service of process is governed by Rule 12(b)(5). Time requirements and the like are set forth under Rule 4(m).

**1. Amendments to Rule 4(m)**

Until 1993, under Rule 4(j),[1] the Court was required to dismiss a complaint without prejudice if service was not made within 120 days of the complaint's filing:

> If the service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

In 1993, the Rule was amended and became 4(m). Specific language was added to allow the Court to "direct that service be effected within a specified time" if service was untimely:

> If service of the summons and complaint is not made upon a defendant within 120 days after

---

[1] Until 1993, Rule 4(m) was Rule 4(j).

> the filing of the complaint, the court, upon
> motion or on its own initiative after notice
> to the plaintiff, shall dismiss the action
> without prejudice as to that defendant or
> direct that service be effected within a
> specified time; provided that the plaintiff
> shows good cause for the failure, the court
> shall extend the time for service for an
> appropriate period.

The advisory committee note to the 1993 amendment explains that an extension must be granted if good cause exists. It further states that Rule 4(m) "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown." The notes provide examples of when this might take place: "if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service."

In 2007, Rule 4(m) was amended again. The advisory committee notes for the 2007 amendment provide that the changes "are intended to be stylistic only" and are "part of the general restyling of the Civil Rules to make them more easily understood."

Finally, in 2015, Rule 4(m) was amended to change the time period for service from 120 days to 90 days. The current version of Rule 4(m) states, in relevant part, as follows:

> If a defendant is not served within 90 days
> after the complaint is filed, the court — on
> motion or on its own after notice to the
> plaintiff — must dismiss the action without
> prejudice against that defendant or order that

OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS

> service be made within a specified time. But
> if the plaintiff shows good cause for the
> failure, the court must extend the time for
> service for an appropriate period.

**2. Good Cause Under Rule 4(m)**

Under 4(m), "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." In determining whether good cause exists, the Court must consider whether the following took place:

> (1) the delay in service was outside the
> plaintiff's control, (2) the defendant was
> evasive, (3) the plaintiff acted diligently or
> made reasonable efforts, (4) the plaintiff is
> pro se or in forma pauperis, (5) the defendant
> will be prejudiced, or (6) the plaintiff asked
> for an extension of time under Rule
> 6(b)(1)(A).

Greenbrier Hotel Corp. v. ACE Am. Ins. Co. (CHUBB), No. 2:19-cv-00118, 2019 WL 2353372, at *2 (citing Scott v. Md. State Dep't of Labor, 673 F. App'x 299, 306 (4th Cir. 2016)). The plaintiff bears the burden of establishing that good cause exists. Beasley v. Bojangles' Rests., Inc., No. 1:17CV255, 2018 WL 4518693, at *1. It is "determined on a case-by-case basis within the discretion of the district court." Scott, 673 F. App'x at 306.

**3. Extending Service in the Absence of Good Cause**

In 1995, two years after the 1993 amendments to 4(m), the Fourth Circuit decided Mendez v. Elliot, 45 F.3d 75 (4th Cir. 1995). In Mendez, service was accomplished 177 days after the

OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS
---

complaint was filed and 57 days after the deadline. Id. at 77. The
district court dismissed the action because the plaintiff failed
to demonstrate good cause. Id. at 78. The Fourth Circuit affirmed
the district court, writing that "Rule 4(m) requires that good
cause be shown for obtaining an extension." Id. at 80.

Despite the holding in Mendez, the following year, the Supreme
Court of the United States wrote in dicta that "in 1993 amendments
to the Rules, courts have been accorded discretion to enlarge the
120-day period 'even if there is no good cause shown.'" Henderson
v. United States, 517 U.S. 654, 662 (1996). Further, the Fourth
Circuit has held in a number of unpublished decisions that
extensions may be granted without good cause. See, e.g., Scruggs
v. Spartanburg Reg'l Med. Ctr., 198 F.3d 237, No. 98-2364, 1999 WL
957698, at *2 (4th Cir. 1999) (unpublished) (refraining from
formally adopting Henderson dicta but noting that "the district
court, in its discretion, could have extended the time for proper
service of process, notwithstanding its apparent belief to the
contrary"); Giacamo-Tano v. Levine, 199 F.3d 1327, No. 98-2060,
1999 WL 976481, at *1 (4th Cir. 1999) (unpublished) ("Even if a
plaintiff does not establish good cause, the district court may in
its discretion grant an extension for time of service.").

The United States District Court for the Northern District of
West Virginia has recognized the same concept in multiple
decisions. In Bruce v. City of Wheeling, the defendants argued

that the complaint must be dismissed because the plaintiff failed to show good cause. No. 5:07CV76, 2008 WL 4763274, at *3 (N.D.W. Va. Oct. 29, 2008). Judge Stamp wrote that the defendants were relying on case law that was no longer applicable under the 1993 and 2007 amendments to 4(m): "[m]ost courts have held that the [1993] amendment substantively changes the rule's content by eliminating the good cause requirement[.]" Id.

While acknowledging that Mendez is a published opinion in the Fourth Circuit, Judge Stamp noted that the relevant events in Mendez occurred between April 1993 and October 1993, when the amended 4(m) did not go into effect until December 1993. Id. at *4. In light of the amendments to 4(m), Henderson, unpublished post-Mendez decisions, and the weight of authority, Judge Stamp found that 4(m) permits courts to enlarge the time for service in the absence of a good-cause showing. Id. at *5. He found that the following factors should be considered in determining whether to grant an extension to a plaintiff who has not shown good cause: "whether a statute of limitations bar would preclude the plaintiff from re-filing, whether an extension will prejudice the defendant, whether the defendant had actual notice of the lawsuit, and whether the plaintiff eventually effected service." Id.

Judge Stamp reiterated this approach to Rule 4(m) in other cases. See, e.g., Hardy v. Astrue, No. 5:09CV112, 2010 WL 1138338, at *4 (N.D.W. Va. Mar. 19, 2010) (granting an extension in the

OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS

absence of good cause after finding that "the plaintiff did eventually effect service" and that there was "no evidence to suggest that [the defendant] was prejudiced by this extension"); Cox v. Babcock & Wilcox Constr. Co., 5:09CV84, 2009 WL 3764831, at *4 (N.D.W. Va. Nov. 9, 2009) (granting an extension in the absence of good cause after finding that "the plaintiff did eventually effect service, only one day after the permitted time period prescribed" and that "the defendants have offered no argument, and this Court finds no evidence to suggest, that they were prejudiced by this extension").

Based on the text of the rule itself, the committee notes, the dicta in Henderson, and the approach taken in various unpublished decisions, this Court finds that it has discretion to extend time for service even when good cause is absent.[2] According to the advisory committee notes and the test applied by Judge Stamp

---

[2] The Court recognizes that there is authority in the district, in addition to Mendez, to the contrary. See, e.g., Martinez v. United States, 578 F. App'x 192, 193 (4th Cir. 2014) (unpublished) ("A plaintiff may escape dismissal for failure to timely serve process only if she demonstrates 'good cause' for the delay."); Hager v. Graham, No. 5:05CV129, 2007 WL 1089088, at *2 (N.D.W. Va. Mar. 30, 2007) (noting that the "trial court does not have discretion to extend time absent showing of good cause"); Carrigan v. Eli Lilly & Co., No. 5:05CV131, 2006 WL 1705909, at *2 (N.D.W. Va. 2006) (also noting that the "trial court does not have discretion to extend time absent showing of good cause"); T&S Rentals v. United States, 164 F.R.D. 422, 427 (N.D.W. Va. 1996) (dismissing because no good cause existed). See also Marinkovic v. Schultz, No. CR-16-1461, 2017 WL 6422372, at *4 (D. Md. Aug. 9, 2017) (recognizing disagreement in the Fourth Circuit and ultimately following Mendez and dismissing due to lack of good cause).

in Bruce, the Court should consider the following: "whether a statute of limitations bar would preclude the plaintiff from re-filing, whether an extension will prejudice the defendant, whether the defendant had actual notice of the lawsuit, and whether the plaintiff eventually effected service." Bruce, 2008 WL 4763274, at *5.

## IV.  ANALYSIS

Defendants Casdorph, Hospital, RC General, Nary, and M&L Electric filed Motions to Dismiss the Amended Complaint pursuant to Rules 9(b), 12(b)(5), 12(b)(6), and 41(b) of the Federal Rules of Civil Procedure.

### A. Defendant Michael Casdorph's Motion to Dismiss [ECF No. 33], Defendant Highland-Clarksburg's Motion to Dismiss [ECF No. 35], and Defendants Charles Nary and M&L Electric's Motion to Dismiss [ECF No. 55]

Defendants Casdorph, Hospital, Nary, and M&L Electric (to be referred to as "moving Defendants" throughout this section) move for dismissal of the Amended Complaint pursuant to Rules 12(b)(5) and 41(b), arguing that Plaintiff failed to properly serve her original complaint within the required 90 days. Because of this, moving Defendants assert a Rule 41(b) dismissal is also warranted. Id.

Plaintiff had through and until January 31, 2022, to serve the defendants. See ECF No. 21. Plaintiff filed the Amended Complaint that day, but did not effectuate service. The Clerk

issued a summons to Associated Architects, Michael Casdorph, Hospital, M&L Electric, Charles Nary, RC General, and Paul Tennant by certified mail. ECF Nos. 24, 25, 26, 42, 45, 46, 53. Proof of service on Defendant Casdorph indicates the date of February 4, 2022, and was signed by Kay Chapman, not an agent or attorney in fact authorized to accept service for Casdorph. ECF No. 25. Proof of service on Defendant Hospital indicates the date of February 4, 2022, and was signed by Tammy Allman, the Hospital's receptionist and not a registered agent for the Hospital. ECF No. 24. Proof of service on Defendant RC General indicates the date of February 4, 2022, and was signed by Kay Chapman. ECF No. 26. Proof of service on Defendant Associated Architects indicates the date of February 7, 2022, and does not show a signatory. ECF No. 42. Proof of service on Defendant Charles Nary indicates the date of February 28, 2022, and was signed by Donna Nary. ECF No. 45. Proof of service on Defendant M&L Electric indicates the date of February 28, 2022, and was signed by Donna Nary. ECF No. 46. No proof of service was returned for Defendant Paul Tennant. ECF No. 53.

Plaintiff responded in opposition to the motions and requested an extension of time to perfect service as to all defendants because her delay was the result of excusable neglect, and the First Amended Complaint relates back to the original complaint pursuant to Rule 15 of the Federal Rules of Civil

**OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS**

Procedure. ECF No. 66. Nowhere in the response does Plaintiff argue good cause. The Court must address it nonetheless.

The Court finds good cause pursuant to Rule 4(m) does not exist. First, Plaintiff's counsel does not offer any justification for the untimely service beyond blaming the United States Post Office and the District Court Clerk's Office for the "delay in receipt of the summonses . . . due to COVID mitigation related delays." The Court is unaware of such delays on behalf of the District Clerk's Office, as there was no closure of the Clerk's Office during this time. What's more, there appears to be no attempt to serve the complaint on Defendants until Plaintiff filed the Amended Complaint on January 31, 2022. ECF No. 22. Only then did the District Clerk issue summonses **the same day**. Counsel does not reference any other issues, personal or professional, that affected timely service. Plaintiff has not established good cause for her failure to timely serve, so the Court is not required to extend the time for service.

The Court can, however, extend time for Plaintiff to effectuate service absent good cause. Here, first, the statute of limitations does preclude Plaintiff's amended action. The Court must consider whether Plaintiff's Amended Complaint relates back to the date of the original pleading. According to Rule 15(c) of the Federal Rules of Civil Procedure,

An amendment to a pleading relates back to the

OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS

> date of the original pleading when: (A) the
> law that provides the applicable statute of
> limitations allows relation back; (B) the
> amendment asserts a claim or defense that
> arose out of the conduct, transaction, or
> occurrence set out—or attempted to be set out—
> in the original pleading; or (C) the amendment
> changes the party or the naming of the party
> against whom a claim is asserted . . . .

Fed. R. Civ. P. 15(c). Plaintiff's amended claims satisfy Rule 15(c) and relate back to the original filing date, December 10, 2018, because they arise out of the conduct, transaction, or occurrence set out in the original complaint. Plaintiff's amended claims clarify and particularize the claims made in the original complaint, in part by adding numerical amounts to the existing allegations of stolen funds by Defendants. See ECF No. 22, Am. Compl. Defendants' alleged conflicts of interest were alleged in the original complaint and expanded upon in the Amended Complaint. Both complaints contain the same three (3) causes of action under the FCA and lodge the allegations against the same Defendants. The Amended Complaint clearly meets Rule 15(c)(1)(B)'s relation back requirements because "the amendments have a strong factual nexus to the Original Complaint." United States ex rel. Carter v. Halliburton Co., 315 F.R.D. 56, 63 (E.D. Va. 2016). Indeed, Plaintiff's Amended Complaint "do[es] no more than restate the original claim with greater particularity or amplify the details of the transaction alleged." Id.

OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS

Because the amended complaint relates back to the original complaint, the Court finds it would not be barred by the statute of limitations.

> A civil action under section 3730 may not be brought – (1) more than 6 years after the date on which the violation of section 3729 is committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731(b). The violations allegedly occurred between October 2013 December 2013, which is approximately five years before December 10, 2018. Therefore, the 6-year limitations period in § 3731(b)(1) is not expired, and Plaintiff's claims are not time-barred.

Second of the Bruce factors is whether an extension will prejudice Defendants. While moving Defendants have argued it, they have not pointed to any evidence that they would be prejudiced by an extension. Third, moving Defendants had actual notice of the lawsuit by, at the latest, February 28, 2022. Fourth, Plaintiff did eventually complete service on moving Defendants, again, at the latest, on February 28, 2022, soon after the motions to dismiss were filed. The Court finds that these factors weigh in favor of Plaintiff. On these grounds, motions to dismiss [ECF Nos. 33, 35, 55] are **DENIED** pursuant to Rules 12(b)(5) and 41(b).

OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS

**B. Defendant RC General Contractors Inc.'s Motion To Dismiss [ECF No. 36]**

In addition to Defendant RC's arguments that Plaintiff's claims are barred by the statute of limitations and that dismissal pursuant to Rules 12(b)(5) and 41 is appropriate, both of which are rejected by the Court for the same reasons discussed above, Defendant RC General alleges Plaintiff failed to plead her FCA claims with particularity, a requirement under Rule 9(b)'s heightened pleading standard. ECF No. 37 at 6-10. On this basis, RC General requests a Rule 12(b)(6) dismissal because Plaintiff failed to state a claim for which relief can be granted.

> To state a claim under the FCA, the plaintiff must prove: (1) that the defendant made a false statement or engaged in a fraudulent course of conduct; (2) such statement or conduct was made or carried out with the requisite scienter; (3) the statement or conduct was material; and (4) the statement or conduct caused the government to pay out money or to forfeit money due.

U.S. ex rel. Harrison v. Westinghouse Savannah River Co., 352 F.3d 908, 913 (4th Cir. 2003) (internal citation omitted). "[T]he identity of the person making the misrepresentation and what he obtained thereby" is also part of the Rule 9(b) inquiry. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). The Court finds allegations in the Amended Complaint to support a sufficient Rule 9(b) pleading of the violations of FCA claims.

OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS

First, the details of Defendant RC General's ACH direct payment of $79,452.69, completed on October 7, 2013, supports Rule 9(b)'s particularity requirements of time, place, and contents of the false representations, as well as the identity of the parties involved. ECF No. 22, Am. Compl. ¶¶ 110-24. That total included an 8% extra fee, which Plaintiff argues would "compensate RC General for managing Dougherty Company as a subcontractor and processing the other entity's payment." Id. ¶ 111. Such payment was fraudulent because Defendants sent a direct payment of $73,567.31 to Dougherty Company, for the same work RC General had completed. Id. ¶¶ 110-114. The duplicate payments here represent Plaintiff's allegations of fraudulent theft of government funds. "Either RC General falsely claimed and unlawfully retained the $73,567.31 and the 8% fee or RC General paid Dougherty twice thereby causing a false claim." Id. ¶ 123. The Amended Complaint spends considerable time discussing the innerworkings of Defendants and individuals in power of the Defendant entities. See, e.g., id. ¶¶ 12-28.

These allegations show sufficient evidence of an FCA claim at the Rules 9(b) and 12(b)(6) stage. It is based on these facts that Plaintiff overcomes the stringent pleading requirement of Rule 9(b). The Court **DENIES** the motion to dismiss. ECF No. 36.

## V.   CONCLUSION

For the reasons discussed above, the Motions to Dismiss [ECF Nos. 33, 35, 36, 55] are **DENIED**. The **STAY** is hereby **LIFTED**.

**OMNIBUS MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS**

Plaintiff's motion for extension of time to perfect service on the remaining Defendants is **GRANTED**, and Plaintiff shall serve the Amended Complaint within twenty (20) days of this Memorandum Opinion and Order. ECF No. 66. The Court will issue a Second Order and Notice Regarding Discovery and Scheduling in the near future, and the case will proceed in normal course.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record via the CM/ECF filing system and pro se parties by certified mail, return receipt requested.

**DATED:** September 22, 2022

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA